Gants, Ralph D., J.
In May 2002, the plaintiff LR5-A Limited Partnership (“LR5-A”) lent $300,000 to the defendant Meadow Creek, LLC (“Meadow Creek”). Payment of the loan was guaranteed by the defendant Frederick Fahey (“Mr. Fahey”). The promissory note and guaranty was later amended to reflect a $150,000 principal balance. There is no material dispute that the loan is in default, and that the amount due is well over the $150,000 in principal.
On October 5, 2006, Ronald DeCola (“DeCola”), Mr. Fahey’s financial analyst, ■ purchased two lots in the Meadow Creek development at a foreclosure sale for $126,000 each, and then quickly “flipped” the properties by assigning his bid to a third party, Regency Homes, LLC, for $175,000 each, reaping a quick profit of $98,000. LR5-A learned of DeCola’s foreclosure purchase and property flip and, believing that DeCola was acting as Mr. Fahey’s “straw” to avoid exposing his assets to creditors, sought and obtained an ex parte trustee process attachment from Judge Geraldine Hines obliging DeCola to retain the proceeds of the property flip.
At the adversarial motion for a trustee process attachment and preliminary injunction, Mr. Fahey’s wife, Laurie Fahey (“Ms. Fahey”), moved to intervene, and her motion was allowed. In the affidavit she filed, she attested that:
She was a school teacher in the Dracut public schools, and maintained separate checking and credit card accounts from her husband.
On July 28, 2006, she made a $30,000 cash advance on her credit card, which she deposited in her TD Banknorth checking account.
She learned that the two Meadow Creek lots were to be sold at public auction and, through her husband, enlisted the help of DeCola, who agreed to help her purchase the lots.
On or about October 5, 2006, she withdrew $30,000 from her TD Banknorth account, in the form of two $15,000 cashier’s checks made payable to DeCola, which were to be used as deposits for the purchase of the two lots.
She included with her affidavit her bank statement for July 2006, which reflected the $30,000 deposit, and a letter from the TD Banknorth Customer Sales and Service Manager verifying her purchase of two $15,000 cashier’s checks. While Ms. Fahey did not expressly state that the $30,000 she withdrew on October 5 derived from the $30,000 credit card cash advance she had deposited on July 28, that was certainly the inference she encouraged Judge Hines to draw and which Judge Hines indeed did draw.[1]
Judge Hines relied upon Ms. Fahey’s affidavit in denying LR5-A’s motion for preliminary injunction and in vacating the trustee process attachment. In her Order, dated December 19, 2006, Judge Hines found that LR5-A was likely to succeed on the merits of its claim, since the defendants neither disputed the debt nor the fact that they had failed to pay the debt. However, in view of Ms. Fahey’s affidavit and the attachments to that affidavit, which Judge Hines found established “that she used her own credit to secure the funds for the purchase of the property,” Judge Hines found that LR5-A had failed to establish that Ms. Fahey was acting as Mr. Fahey’s agent in the purchase of those properties.
Subsequent investigation by LR5-A, including the later deposition of Ms. Fahey, demonstrate that Ms. Fahey’s affidavit was materially false in many ways. In fact, Ms. Fahey had spent nearly all the $30,000 cash advance by the end of August 2006 — her checking account balance as of September 3, 2006 was only $878.25 — so this $30,000 could not have been the source of funds for the down payment. Rather, the source of the $30,000 down payment was a $57,411.99 deposit into her checking account on September 25, 2006. That deposit consisted of a check in the same amount made payable to Mr. Fahey from the Valley Forge Life Insurance Company. Moreover, the *634 $30,000 withdrawn on October 5 was withdrawn in the form of a check from her made payable to Mr. Fahey, which was then cashed at a check cashing service that appears to have issued the cashier’s checks to DeCola.
Ms. Fahey contends that her memory was simply faulty regarding the source of her down payment, and that she thought at the time she filed the affidavit that the money came from her cash advance. She claims to have forgotten about the deposit of $57,411.99, which she now admits had been borrowed by her husband on his life insurance policy. She contends that she considered the money from Valley Forge to be her own, because she was the beneficiary of the policy. (The money, of course, was legally not hers, because Mr. Fahey in his lifetime is free to change his policy beneficiary.)
LR5-A now moves this Court for sanctions against Mr. and Ms. Fahey based on the misrepresentations made to Judge Hines. They ask the Court to order the Faheys to deposit with the Court or place in escrow the $98,000 that would have been attached through trustee process if Ms. Fahey, with Mr. Fahey’s knowledge, had not misled the Court and caused it to vacate the attachment. They also ask for the attorneys fees and costs they incurred in conducting the discovery and motion practice needed to uncover these misrepresentations, and in litigating this motion for sanctions.
DISCUSSION
This Court finds incredible Ms. Fahey’s assertion that her error was simply a good faith mistake. She is a schoolteacher and, therefore, this Court infers, an intelligent person. Times were tough financially for the Faheys in 2006, which is why she had to take the rather desperate step of taking a $30,000 credit card advance. The credit card advance and the advance on the life insurance policy were the only two large deposits in her checking account between July and October 2006; it is hard to believe she forgot about the latter and did not realize how the former had been spent. Nor can she credibly contend that these events were in the distant past; her affidavit is undated but was plainly filed before Judge Hines’s decision on December 19, 2006, only two months after the $30,000 withdrawal was made to fund the down payment. This Court, however, need not decide whether she committed peijuiy; it is sufficient for purposes of this sanction motion to find that she acted in reckless disregard of the truth by failing to review her checkbook and her bank statements before filing her affidavit with the Court, since even a cursory review of either of those documents should surely have revealed to her that the source of the down payment was not the July $30,000 credit card advance.
Mr. Fahey is equally, if not more culpable, for the misrepresentations made to the Court, because he surely must have known that his wife’s affidavit was false. It was him who had borrowed on his life insurance policy (hardly a routine transaction) and provided the check to his wife for deposit in her account, and he had to have purchased the two cashier’s checks, since the $30,000 check from Ms. Fahey’s account was made payable to him, not DeCola. In short, he knew that his wife was providing a false affidavit to the Court, and stood silently by, no doubt because he financially benefitted from the misimpression she was providing to the Court.
The Faheys assert that Ms. Fahey’s false statement falls short of constituting a fraud on the court, which the Supreme Judicial Court has declared is limited to those egregious instances “where ‘it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system’s ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party’s claim or defense.’ ” Wojcicki v. Caragher, 447 Mass. 200, 209-10 (2006), quoting Paternity of Cheryl, 434 Mass. 23, 35 (2001), which quotes Rockdale Mgt. Co. v. Shawmut Bank, N.A., 418 Mass. 596, 598 (1994). This Court need not determine whether the Faheys’ misconduct reaches the level of a fraud on the court, because LR5-A is seeking sanctions, not a new trial, and there can be no serious question that the Faheys’ misconduct deserves to be severely sanctioned.
The question, then, is what sanctions are appropriate? This Court finds that the appropriate sanction for the reckless disregard for the truth in Ms. Fahey’s affidavit and Mr. Fahey’s silence when he knew the affidavit to be false is to put LR5-A in the same position it would have been in had the false statements not misled the Court. LR5-A suffered three financial injuries arising from the false affidavit:
1. It lost the trustee attachment that Judge Hines otherwise would have continued in force, and thereby lost $98,000 in secured funds on its claim to enforce Mr. Fahey’s guaranty of the promissory note;
2. It expended considerable attorneys fees to depose Ms. Fahey and uncover the falsity of her affidavit, as well as attorneys fees to defeat the Faheys’ motion for a protective order that sought to prevent her deposition; and
3. It incurred attorneys fees in litigating this motion for sanctions.
Therefore, as sanctions, this Court orders Mr. and Ms. Fahey, no later than March 21, 2008, to deposit with the Court or otherwise suitably escrow $98,000 in principal, plus interest calculated at five percent common interest from December 19, 2006, to provide LR5-A with secured funds equivalent to what LR5-A would have received if Judge Hines had not vacated her order of trustee attachment. This Court further orders Mr. and Ms. Fahey to pay LR5-A its reasonable *635 attorneys fees and costs incurred in litigating the motion for a protective order, in deposing Ms. Fahey, and in obtaining the relevant documents that demonstrated the falsity of Ms. Fahey’s affidavit. This Court also orders Mr. and Ms. Fahey to pay LR5-A its reasonable attorneys fees and costs incurred in litigating this motion. LR5-A’s attorneys shall serve the Faheys’ attorneys no later than March 21, 2008 with LR5-A’s application for attorneys fees, supported by affidavits and appropriate documentation. The Faheys may oppose the application no later than April 11, 2008. A hearing on the application shall be conducted on April 17, 2008 at 2 p.m.
ORDER
For the reasons detailed above, this Court ORDERS that:
1. LR5-A’s motion for sanctions against Mr. and Ms. Fahey is ALLOWED.
2. Mr. and Ms. Fahey, no later than March 21,2008, shall deposit with the Court or otherwise suitably escrow $98,000 in principal, plus interest calculated at five percent common interest from December 19, 2006, to provide LR5-Awith secured funds equivalent to what LR5-A would have received if Judge Hines had not vacated her order of trustee attachment.
3. Mr. and Ms. Fahey shall pay LR5-Aits reasonable attorneys fees and costs incurred in litigating the motion for a protective order, in deposing Ms. Fahey, and in obtaining the relevant documents that demonstrated the falsity of Ms. Fahey’s affidavit.
4. Mr. andMs. Fahey shall pay LR5-A its reasonable attorneys fees and costs incurred in litigating this motion.
5. LR5-A’s attorneys shall serve the Faheys’ attorneys no later than March 21, 2008 with LR5-A’s application for attorneys fees, supported by affidavits and appropriate documentation. The Faheys may oppose the application no later than April 11, 2008. A hearing on the application shall be conducted on April 17, 2008 at 2 p.m.

 Indeed, Ms. Fahey attested that the $30,000 cash advance was “originally to assist my family with household expenses.” (Emphasis added.) The use of the word “originally” infeiTed that this money was actually used for another purpose — the downpayment on the purchase of the two lots.